UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RONALD DE'RAY SKIPPER, # 138244, ) | Civil Action No.: 4:05-3024-HFF-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| SOUTH CAROLINA DEPARTMENT OF ) | |
| CORRECTIONS; JON OZMINT, Director; ) | |
| MARY COLEMAN, Inmate Grievance ) | |
| Branch; and DAVID TARTARSKY, ) | |
| General Counsel, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

     Plaintiff, Ronald De'Ray Skipper, is an inmate in the custody of the South Carolina Department of Corrections (SCDC), and was housed at Evans Correctional Institute (ECI) at all times relevant to this action. Plaintiff, appearing pro se[1], filed his Complaint on October 24, 2005. Although not completely clear from the Complaint, Plaintiff appears to bring this action pursuant to 42 U.S.C. § 1983 for violations of Fourth Amendment due process rights. On February 15, 2006, Plaintiff filed a Motion for Default Judgment. The undersigned found that Defendants filed an Answer to Plaintiff's Complaint within twenty days of the date of service and, thus, recommended that the motion be denied. The district judge adopted the recommendation and denied the motion. On February 15, 2006, Plaintiff also filed a Motion to Amend his Complaint, which was granted without opposition on April 21, 2006. The Amended Complaint changed the name of Defendant

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C. Because this is a dispositive motion, the Report and Recommendation is entered for review by the District Judge.

Mary Clark to Mary Coleman and added "declaratory judgment" to his request for relief. No other changes were made.

Presently before the Court is Defendants' Motion for Summary Judgment (Document # 33), which was filed on May 18, 2006. The undersigned issued an Order, filed May 19, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the Motion for Summary Judgment and the possible consequences if he failed to respond adequately. Plaintiff filed a response to the Motion on August 15, 2006.[2]

## DISCUSSION

*First Cause of Action*

Plaintiff's first cause of action alleges violations by Defendants in connection with his work through the prison industries project. Plaintiff was employed through the prison industries project, which was operated by SCDC's Division of Industries at ECI. Plaintiff alleges in his Amended Complaint that he "was made to work" for twenty-five cents per hour for the first 160 hours of labor, seventy-five cents per hour for the next 160 hours of labor, and ninety-five cents per hour for the next 160 hours, "for a total of 480 hours at less than the prevailing wage." Amended Complaint at 4. According to Plaintiff, he filed a Step One Grievance on September 2, 2004 (first grievance), "after discovering the South Carolina Supreme Courts [sic] decision in Wicker v. South Carolina Department of Corrections, 360 S.C. 421, 602 S.E.2d 56 (August 24, 2003)[3] . . . seeking compensible

---

[2]Plaintiff filed two Motions for Extension of Time to respond to Defendants' Motion for Summary Judgment, which were granted.

[3]In Wicker, the Supreme Court held that the SCDC was required to pay inmates in prison industries program the prevailing wage during their training period because nothing in the statutory scheme creating the prison industries program authorized the SCDC to pay a training wage less than the prevailing wage. Id. at 425, 602 S.E.2d at 58. The Court also noted its

[sic] damages, treble damages, interest, and overtime compensation." Id. Plaintiff received a response to his grievance on December 10, 2004, denying the relief he had requested. Plaintiff filed a Step Two Appeal/Grievance on December 14, 2004. He has not received a response to his Step Two Appeal/Grievance.

Plaintiff filed another Step One Grievance on December 16, 2004 (second grievance), alleging an illegal taking of FICA deductions on the part of the SCDC "due to the fact that 42 U.S.C. § 402(x)(1)(A)(I) does not afford Plaintiff the ability to enjoy any benefit associated to the Social Security statutes." Amended Complaint at 5. Plaintiff received a response to his grievance on February 28, 2005, denying the relief he had requested. Plaintiff filed a Step Two Appeal/Grievance on March 4, 2005. He has not received a response to his Step Two Appeal/Grievance.

On August 18, 2005, Plaintiff forwarded a formal correspondence to Administrative Law Court seeking some form of final agency decision so that he could proceed to the next step. Docket number 05-ALJ-04-00730-AP was assigned to Plaintiff's correspondence. The record fails to reveal what other, if any, action has been taken on this correspondence.[4]

*Second Cause of Action*

Plaintiff's second cause of action arises out of two other grievances filed by Plaintiff. On July 26, 2005, Plaintiff filed a Step One Grievance (third grievance) alleging that on July 14, 2005, Lt. A.

---

holding in Adkins v. South Carolina Dep't of Corrections, 360 S.C. 413, 419, 602 S.E.2d 51, 55 (2004), that, although the statutory scheme creating the prison industries program does not give rise to a private, civil cause of action, inmates can file an inmate grievance to protest SCDC's failure to pay wages in accordance with mandatory statutory provisions. Wicker, 360 S.C. at 423, 602 S.E.2d at 57.

[4]In his response to Defendant's motion, Plaintiff asserts that his administrative claim filed with the Administrative Law Court was dismissed. It is not clear whether the administrative claim addressed one or more of Plaintiff's administrative grievances.

Davis entered Plaintiff's room and confiscated his personal typewriter and when the typewriter was returned to Plaintiff on July 25, 2005, Plaintiff discovered that the typewriter was not working properly. On August 2, 2005, the grievance was returned to Plaintiff unprocessed because it had too many pages attached as addendums. Plaintiff was informed that he could resubmit his Grievance, which he did on September 29, 2005. Plaintiff has not received a response to this Step One Grievance.

Plaintiff also references a Step One Grievance he filed on August 9, 2005 (fourth grievance), in which he alleged indifference to diabetes as a serious medical condition. On September 27, 2005, the grievance was returned to Plaintiff unprocessed because it had too many pages attached as addendums. Plaintiff was informed that he could resubmit this grievance but has not done so.

***Relief Requested***

In his Amended Complaint, Plaintiff requests "nominal damages, treble damages, overtime compensation, punitive damages for emotional and metal anguish, and declaratory judgment, and any other relief to include, but not limited to, costs of this action . . . ." Amended Complaint at 10.

***Summary Judgment Standard***

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

*Failure to Exhaust Administrative Remedies*

Defendants assert that Plaintiff has failed to exhaust his administrative remedies as to his four grievances. The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997(e)(a). The United States Supreme Court has held that the PLRA exhaustion requirement is mandatory. Booth v. Churner, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); Woodford v. Ngo, 126 S.Ct 2378, 2382 (2006). The requirement of

proper exhaustion "'means using all steps that the agency holds out, and doing so properly.'" Woodford, 126 S.Ct at 2385 (citing Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002).

The SCDC Policy/Procedure GA-01.12 "Inmate Grievance System" (November 1, 2004)[5] provides a procedure whereby inmates may challenge prison conditions. Inmates are required to attempt informal resolution before filing a grievance. The actual process consists of two stages: Step One (SCDC Form 10-5) is reviewed by the administration of a given correctional institution; Step Two (SCDC Form 10-5A) is reviewed within SCDC above the level of the institution warden.[6] SCDC deadlines for review of Step One grievances and Step Two appeals are forty (40) and sixty (60) days respectively. Denial of a Step Two grievance constitutes the final decision of SCDC. In addition, the Policy provides that "[i]f, at the institutional level, the response to the grievance exceeds the established time limits, the grievance will automatically proceed to the next level of appeal. The only exception will be when the Inmate Grievance Branch grants a continuance for a specific period of time." GA-01.12 ¶ 13.5.[7]

If the Step 2 grievance is denied, then the Policy/ Procedure states the following with regard to the Administrative Law Judge Division:

---

[5] When Plaintiff filed his September 2, 2004, Grievance, the August 1, 2002, edition of Policy GA-1.12 was in effect. Although some of the paragraph numbers are different, the substantive portions of the policy relevant to this case are largely the same in both editions. Any differences will be noted.

[6] On May 9, 1996, this court certified that the inmate grievance procedure established by the South Carolina Department of Corrections met the requirements of 42 U.S.C. § 1997e(a)(2). See Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996), which incorporate by reference SCDC PS-10.01 (May 1, 1996).

[7] GA-01.12 ¶ 14.5 in the August 1, 2002, edition.

>13.7 There are five (5) grievance issues that an inmate may appeal to the South Carolina Administrative Law Judge Division. If an inmate wishes to appeal to the South Carolina Administrative Law Judge Division, s/he may only appeal final Department Decisions on the following five (5) issues:
>
>13.7.1 if the inmate's accrued good time has been taken as a result of a disciplinary hearing;
>
>13.7.2 the calculation of a sentence;
>
>13.7.3 the calculation of sentence related credits;
>
>13.7.4 custody determinations that may be grieved under this policy/procedure; or
>
>13.7.5 Allegations of deprivations that would rise to the level of constitutional violations, and where harm or injury is alleged, it must be more than a minor harm or minor injury.
>
>13.8 If the grievance is not about one of these five (5) issues, the Department's final response will end the grievance process.

SCDC Policy/Procedure GA-01.12.[8]

Plaintiff complains that he has not been able to proceed to the next step for his first, second, and third grievances because he has yet to receive a response from the SCDC. However, as set forth above, paragraph 13.5[9] of SCDC Policy/Procedure GA-01.12 provides that the grievance will automatically proceed to the next level of appeal if the response to the grievance exceeds the established time limits. Because Plaintiff's first and second grievances fall under paragraph 13.7.5[10] listed above, the next level of appeal would be Administrative Law Judge Division. See Hills v. South Carolina Department of Corrections, No. 4:05-319-JFA-TER (D.S.C. Sept. 6, 2006), 2006 WL

---

[8] Paragraphs 14.7.1-14.7.5 and 14.8 in the August 1, 2002, edition.

[9] Paragraph 14.5 in the August 1, 2002, edition.

[10] The court in Wicker recognized Plaintiff's first grievance as the type to arise under paragraph 13.7.5. Wicker, 602 S.E.2d at 57-58.

2583752. Therefore, when Plaintiff failed to receive a response within sixty days of his Step Two Appeal for his first grievance and within sixty-five days[11] of his Step Two Appeal for his second grievance, Plaintiff should have filed a notice of appeal to the Administrative Law Judge Division.[12]

Likewise, when Plaintiff failed to receive a response within forty days of his Step One Grievance for his third grievance, he should have filed a Step Two Appeal with the SCDC. It is undisputed that Plaintiff has failed to take these further steps. As such, Plaintiff has failed to exhaust his administrative remedies as to his first, second, and third grievances. Plaintiff's fourth grievance is also barred for failure to exhaust because Plaintiff failed to resubmit his Step One Grievance as instructed after it was returned to him unprocessed. Accordingly, Plaintiff's complaint should be dismissed without prejudice.

*Eleventh Amendment Immunity*

In the alternative, Defendant SCDC contends that Plaintiff's §1983 claims against it for monetary damages are barred pursuant to Eleventh Amendment Immunity. In addition, Defendants Ozmint, Coleman, and Tartarsky argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacities because while acting in their official capacity as employees of the SCDC they are not "persons" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

---

[11] The November 1, 2004, edition allows an extra five days for service of the decision on the inmate.

[12] To the extent that Plaintiff's "formal correspondence" to the Administrative Law Court on August 18, 2005, could be considered an appeal, it was filed well after thirty days from the deadline for a response to his Step Two Appeal.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Court found that the Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" and that state agencies, divisions, departments and officials are "arms of the state." Will, 491 U.S. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

The SCDC is an arm of the state of South Carolina and, thus, is entitled to Eleventh Amendment Immunity from monetary damages unless some statutory waiver of immunity exists.[13]

---

[13] In his response to Defendants' Motion for Summary Judgment, Plaintiff asserts that his case as it relates to his wages and FICA deductions is brought pursuant to the Fair Labor Standards Act, 29 U.S.C.A. § 201, et seq (FLSA). Plaintiff argues that, pursuant to Gilbreath v. Cutter Biological Inc., 931 F.2d 1320, 1323-24 (9th Cir. 1991), the FLSA provides a statutory waiver of Eleventh Amendment immunity. Plaintiff fails to acknowledge however, that Gilbreath also holds that the Department of Corrections is not an "employer" of inmates for FLSA purposes. Id. at 1324. The Fourth Circuit has also held that the FLSA is not applicable to prison inmates. See Harkin v. State Use Industries, 990 F.2d 131, 133 (4th Cir. 1993). Thus, Plaintiff's argument fails.

As noted above, Plaintiff requests relief in the form of "nominal damages, treble damages, overtime compensation, punitive damages for emotional and metal anguish, and declaratory judgment, and any other relief to include, but not limited to, costs of this action . . . ." Amended Complaint at 10. Although Plaintiff includes declaratory judgment in his request, Defendants are entitled to Eleventh Amendment Immunity as to that claim as well. In Ex Parte Young, the Supreme Court ruled that the Eleventh Amendment does not bar suits seeking to enjoin state officials from committing continuing violations of federal law. Ex Parte Young, 209 U.S. 123,159-160 (1908). Courts have consistently held that "Ex Parte Young represents a limited exception to Eleventh Amendment immunity, applicable only when plaintiffs allege an ongoing violation of federal law." Booth v. State of Maryland, 112 F.3d 139, 142 (4th Cir. 1997)(citing Will, 491 U.S. at 89; Papasan v. Allain, 478 U.S. 265, 277- 278 (1986); Green v. Mansour, 474 U.S. 64, 68 (1985)). Not only does Plaintiff fail to assert the type of declaratory relief he seeks, but a liberal review of Plaintiff's pleadings fails to reveal any allegation of an ongoing violation of federal law. As such the Ex Parte Young exception does not apply and Defendants are entitled to Eleventh Amendment Immunity as to all claims.

Plaintiff fails to indicate in his Amended Complaint whether he is suing Defendants Ozmint, Coleman, and Tartarsky in their official or individual capacities. However, in his response to Defendant's Motion for Summary Judgment, Plaintiff asserts that "it is Plaintiffs [sic] position in which to sue each in their 'official' and 'individual/personal' capacities. Plaintiff's Return to Defendants' Motion for Summary Judgment at 12. There is no dispute that Defendants Ozmint, Coleman and Tartarsky are employees of the SCDC and, thus, state officials acting in their official

capacity while employed by the SCDC. Thus, those defendants are entitled Eleventh Amendment Immunity from monetary damages for actions in their official capacities absent some statutory waiver. However, Defendants did not file a reply to Plaintiff's response and, thus, have not addressed the merits of Plaintiff's claims against these Defendants in their individual capacities. Therefore, if the district judge declines to adopt the recommendation that this case be dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies, the motion for summary judgment against the individual Defendants in their individual capacities should be denied without prejudice and with leave to file a motion for summary judgment addressing the claims against them in their individual capacities within thirty days of the district judge's order.

## CONCLUSION

For the reasons set forth above, it is recommended that Defendants' Motion for Summary Judgment (Document # 33) be granted and this case be dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies. In the alternative, it is recommended that Defendant's Motion for Summary Judgment be granted as to Defendant SCDC and Defendants Ozmint, Coleman and Tartarsky in their official capacities be dismissed in light of Eleventh Amendment immunity and denied without prejudice as to Defendants Ozmint, Coleman and Tartarsky in their individual capacities, allowing them thirty days to file for summary judgment as to the merits of Plaintiff's claims against them in their individual capacities.

                                                                s/Thomas E. Rogers, III
                                                                 Thomas E. Rogers, III
                                                                 United States Magistrate Judge

February 22, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice contained on the following page(s).**